IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SONYA D. PETTAWAY,                    )
                                      )
              Appellant,              )
                                      )
v.                                    )          Civil Action No. 3:13cv241–HEH
                                      )
UNITED STATES DEPARTMENT              )
OF EDUCATION,                         )
                                      )
              Defendant.              )

## MEMORANDUM OPINION
### (Appeal of Bankruptcy Court Decision)

During her Chapter 7 bankruptcy proceedings, Sony D. Pettaway ("Pettaway")

sought a discharge of student loan debt owed to the United States Department of

Education (the "Department") based on an "undue hardship." After a bench trial on the

issue, the Bankruptcy Court rejected Pettaway's claim and entered judgment in favor of

the Department. Pettaway now appeals. For the reasons that follow, the Court will

affirm the judgment of the Bankruptcy Court.

### I. BACKGROUND[1]

Pettaway paid for college in part using funds from a federally-subsidized student

loan, for which she currently owes $19,364.79. She obtained her bachelor of science

---

[1]The facts recited herein are taken primarily from the Bankruptcy Court's
Memorandum Opinion, (ECF No. 1-18,) because the Bankruptcy Court's findings of fact
are reviewed under the deferential "clearly erroneous" standard, *see Goldman v. Capital
City Mortg. Corp. (In re Nieves)*, 648 F.3d 232, 237 (4th Cir. 2011). Appellant does not
appear to challenge the factual findings recited herein, only the legal conclusions drawn
therefrom or the weight to be afforded any particular evidence.

degree in business administration in 1997. She made 13 payments on her student loan debt between graduation and December 17, 2001, totaling $2,192.45. In January 2000, she secured employment with the National Academy of Sciences earning $53,000.00 per year. Unfortunately, Pettaway was involved in an automobile accident soon after she secured this employment, during which she suffered a back injury. She obtained treatment and, ultimately, underwent surgery in September 2000.

Pettaway has been unemployed since her accident in 2000. She did not request any accommodation from her employer, she has not applied for another job, or otherwise sought alternative employment. Pettaway depends on Social Security Disability Income ("SSDI") of $1,091.00 per month for financial support. Initially after her accident, Pettaway also received long-term disability benefits through the "National Academy of Sciences Group Total Disability Insurance Plan" (the "Plan"). However, by August 2004, the Academy's Plan Administrator had terminated those benefits because of a lack of documentation "to support [Pettaway's] inability to perform any occupation for which" she was qualified. (Bankr. Ct. Mem. Op. at 3.)

Pettaway challenged the Plan Administrator's decision. To that end, on June 21, and July 21, 2005, she underwent medical examinations at the request of the Plan Administrator. The examining physician found certain "inconsistencies" in Pettaway's responses to diagnostic tests, leading the physician to conclude that she had engaged in "self-limiting behavior." (*Id.* at 4.) One report indicates that her performance "was completely inconsistent with what she did on her feet in walking to the office and getting on and off the exam table . . . ." (*Id.*) Pettaway also failed a "pin" test, because "there

2

were such inconsistencies with the report of where the pin was and wasn't felt that it

didn't match any confident or recognized patterns . . . of sensory loss." (*Id.*)

Additionally, her "Physical Work Performance Evaluation Summary" conducted during

the June 21, 2005 examination indicates that Pettaway "failed 7 of the 7 consistency

criteria . . . [T]he chances of a compliant patient failing 7 of the 7 criteria are significantly

less than one in one million." (*Id.*) Relying on this evidence, the Plan Administrator

determined that Pettaway was not totally disabled. On judicial review, that determination

was upheld by the United States District Court for the District of Columbia.

Pettaway's treating physicians—Drs. Stopak and Goldsmith—have offered

varying prognoses of her condition. As of 2004, Dr. Stopak indicated that he "expected

[her] condition to improve . . . after surgery [and] anticipate[d her] return to work date [to

be] 3 months after surgery, full-time." (*Id.* at 5.) At the same time, Dr. Stopak offered a

statement indicating that Pettaway was totally disabled. In 2005, Dr. Goldsmith,

"recommended a series of epidural injections," indicating that "[i]f these do not alleviate

her symptoms, then surgical intervention would be warranted." (*Id.*) Pettaway has

offered no more recent medical documentation to indicate whether her condition has

improved, deteriorated, or stayed the same since Drs. Stopak and Goldsmith offered their

prognosis in 2004 and 2005, respectively.

During the relevant time, Pettaway has occasionally traveled to Florida and

Atlantic City, New Jersey. Most notably, between July 2010 and January 2012, she spent

no less than $5,000 gambling in Atlantic City. At one point, the frequency of these trips

3

was monthly. There is also evidence that, during her various trips to Atlantic City, she made "counter" deposits to her checking account totaling $4,131.00. (*Id.* at 6.)

In the last decade, Pettaway has received several personal injury awards resulting from her January 2000 car accident and a slip-and-fall accident at Caesars Atlantic City in 2003. The total value of these awards was no less than $92,000.00, though it remains unclear what portion of that award was actually received by Pettaway. At the very least, she received $10,939.85 from an award of $22,000.00 resulting from her slip-and-fall case against Caesars Atlantic City. She also received a lump sum payment of $21,751.67 from the Social Security Administration. None of these funds were used to pay any of Pettaway's student loan debt.

After filing for Chapter 7 bankruptcy protection, Pettaway brought an adversary proceeding against the Department seeking discharge of her federally-subsidized student loan debt. After a trial on the merits, the Bankruptcy Court found that Pettaway had not met the standard for such a discharge, and so entered judgment in favor of the Department. Pettaway now appeals that decision, arguing that the Bankruptcy Court erred in several respects, all of which may be distilled to two questions: (a) was the Bankruptcy Court permitted to consider Pettaway's expenditure of exempt funds when applying the standard for discharge of federally-subsidized student loan debt and (b) did the Bankruptcy Court properly weigh the medical evidence?

## II. STANDARD OF REVIEW

On appeal to the district court, a bankruptcy court's legal conclusions are reviewed *de novo*, but factual findings are reviewed for clear error. *Goldman v. Capital City*

4

*Mortg. Corp. (In re Nieves)*, 648 F.3d 232, 237 (4th Cir. 2011). "The Supreme Court has repeatedly reiterated the extremely deferential nature of the clearly erroneous standard of review." *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 404 (4th Cir. 2005) (Hamilton, J. concurring in part and dissenting in part) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948))). "If the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *United States v. Springer*, 715 F.3d 535, 545 (4th Cir. 2013) (quoting *Anderson*, 470 U.S. at 573-74). A finding of fact is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 125 (4th Cir. 2011) (quoting *Anderson*, 470 U.S. at 573 (citation and internal quotation marks omitted)).

## III. DISCUSSION

Although Pettaway lists a total of seven issues on appeal, those issues really raise only two questions. First and foremost, she takes umbrage with the Bankruptcy Court's consideration of how she spent personal injury settlement proceeds and disability payments (i.e. that she gambled-away that money). Second, she lists a number of purported errors that are, essentially, challenges to the weight of the medical evidence. The Court addresses these issues in turn.

## A.    Consideration of Exempt Funds Spent Gambling

Pettaway characterizes the Bankruptcy Court's ruling as a reflection of "its own moral ethical views, and not the law." (Appellant's Br. at 7.)  This is because the Bankruptcy Court considered her gambling as evidence that she had not made a good faith attempt to pay her student loans, as required to secure an "undue hardship" discharge under 11 U.S.C. § 523(a)(8). *See Ekenasi v. Educ. Res. Inst. (In re Ekenasi)*, 325 F.3d 541, 546 (4th Cir. 2003) (requiring good faith effort to repay loans to obtain discharge of federally-subsidized student loans).  The money gambled was received from personal injury judgments and disability insurance, therefore it was exempt from creditor process. 42 U.S.C. § 407(a); Va. Code § 34-28.1.  As her argument goes, the Department never could have collected from those funds, so Pettaway was free to spend the money however she pleased.

This argument conflates the distinct concept of exemption with the standard of "undue hardship" as interpreted by the Fourth Circuit.  Ordinarily, "[a] debtor in bankruptcy cannot discharge government-guaranteed educational loans." *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 396 (4th Cir. 2005).  As a narrow exception to this rule, the debtor may receive a discharge of such loans if the debtor proves that an "undue hardship" will otherwise result. *Id.* (quoting 11 U.S.C. § 523(a)(8)).  In relevant part, Section 523(a)(8) provides:

  (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –

(8)   unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –

(A)(i)  an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

(ii)   an obligation to repay funds received as an educational benefit, scholarship, or stipend;

In drafting this Section, Congress made no mention of how exempt assets may bear on the question of "undue hardship" one way or the other. In fact, Congress declined to define the phrase "undue hardship" in this context, leaving that task to the Courts. *In re Frushour*, 433 F.3d at 399 (citation omitted).

The Fourth Circuit has adopted a three-part test to determine "undue hardship" as that term is used in 11 U.S.C. § 523(a)(8). *Id.* at 400 (adopting test from *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)). This test places the burden on the debtor in bankruptcy to prove that: (1) based on current income and expenses, she cannot maintain a "minimal" standard of living for herself and dependents if forced to repay the loans; (2) additional circumstances are such that this financial condition is likely to persist for a significant portion of the repayment period; and, (3) she has made good faith efforts to repay the loans. *Id.* (citation and internal quotation marks omitted). Neither this three-part test nor the statutory language contains any rule limiting the factual analysis to non-exempt assets.

Contrary to Pettaway's view of the case, the Bankruptcy Court has not voided any lawful exemption. Instead, all it has decided is that Pettaway has not met her burden to

7

prove that she made a good faith effort to repay the loans.  There is an important

distinction between Pettaway's *exempt* assets and the standard that she must meet to

enjoy the *discharge* that she now seeks.  The Bankruptcy Court accurately summarized

the difficulty with Pettaway's argument:

> [D]ebtor has advanced the argument that the court should not consider
> sums she received from social security or personal injury recoveries
> because of the exempt nature of these receipts.  This argument lacks merit.
> The test for undue hardship is whether a debtor's financial condition
> prevents payment of the education debt—not whether funds received by
> debtor are distrainable.

(Bankr. Ct. Mem. Op. at 10.)

The Bankruptcy Court was permitted to consider evidence of how Pettaway spent

her money, particularly when determining whether Pettaway made a good faith effort to

repay her student loans.  Of course, the ability to finance repeated gambling excursions

also suggests that a debtor can otherwise maintain more than a "minimal" standard of

living.  *See In re Frushour*, 433 F.3d at 400 (citation and internal quotation marks

omitted).  It made no difference whether that money was exempt or not, as the burden is

on a debtor to prove undue hardship, whatever the circumstances of her finances may be.

Given the record of Pettaway's spending habits—especially her frequent gambling

trips to Atlantic City—it was not clearly erroneous for the Bankruptcy Court to find that

she had not met her burden of proving a good faith attempt to repay her student loans and

inability to maintain a "minimal" standard of living.  Accordingly, the Court will affirm

the Bankruptcy Court's decision on this point.

**B.    Weight of the Medical Evidence Considered**

Pettaway's remaining arguments concern the Bankruptcy Court's consideration of certain medical evidence.  Specifically, she argues that it was error to consider conflicting medical evidence relied upon by the Plan Administrator when terminating long-term disability benefits.  In doing so, she suggests that the Plan Administrator's decision was somehow the result of fraud, though she points to no record evidence to support this contention.  Pettaway also argues that the Bankruptcy Court erred in concluding that her disability would not last for the duration of the loan.  Essentially, Pettaway challenges the weight that the Bankruptcy Court placed on certain medical evidence.

Each of these arguments must be examined through the lens of the clearly erroneous standard of review.  *In re Nieves*, 648 F.3d at 237 (bankruptcy court's findings of fact reviewed under clearly erroneous standard).  Here, Pettaway points to no evidence showing that any of the medical evidence was fraudulent.  The Bankruptcy Court was permitted to weigh the conflicting medical records to determine whether Pettaway met her burden of proof.  In doing so, the Bankruptcy Court relied on the medical examinations conducted at the request of the Plan Administrator, which failed to substantiate Pettaway's claims of disability.  Moreover, the Bankruptcy Court noted that Pettaway's own physicians found that her condition would improve with injection therapy and, if necessary, surgery.  On this record, it cannot be said that the Bankruptcy Court's findings of fact concerning Pettaway's medical condition were clearly erroneous.  Accordingly, the Court must affirm the Bankruptcy Court's decision.

## IV. CONCLUSION

In sum, the Court finds that the Bankruptcy Court applied the correct legal standard and that its findings of fact were not clearly erroneous.  Accordingly, the Court will affirm its decision.

An appropriate Order will accompany this Memorandum Opinion.

_____  /s/
Henry E. Hudson
United States District Judge

Date: Aug 8, 2013
Richmond, Virginia